UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 04-10213-WGY |
| DALE E. MATHENY | ) ) ) | |
| Defendant | ) | |

**POST-TRIAL SUBMISSION OF UNITED STATES**

In follow-up to the colloquy that took place between counsel and the Court at the close of the sentencing trial in this matter, the United States has prepared and now attaches to this memorandum at Exhibits 1 through 5 spreadsheets setting forth tax loss computations for each of the different factual scenarios that were discussed during closing argument with respect to the painters who received compensation from Dale's Professional Painting Service during the years 1997 to 2000.

The sole variable that changes between scenarios is the classification of particular painters as employees versus independent contractors. The scenarios fall across a spectrum, ranging from Scenario 1, in which all painters are classified as employees for purposes of computing the defendant's corresponding income and payroll tax obligations, to Scenario 5, in which all painters are classified as independent contractors for purposes of computing the defendant's tax obligations.

The government has provided two spreadsheets for each scenario. The first sheet is a payroll list setting forth, by year, the names of each painter who received compensation and the dollar amount of the compensation that the government has been able to verify. (Tr. Ex. 3). For each different scenario, the government used strikethroughs to indicate which workers on the

payroll list were being shifted from the "employee" category to the "independent contractor" category. For example, under Scenario 1, all workers were characterized as employees, so no names are stricken through. Under Scenario 2, the Muslim crew (labeled "Various immigrants") were moved into the "independent contractor" category, so that line is stricken through. Under Scenario 3, the Muslim workers, plus Messrs. Hacker, Canata, Sheehan, J. Matheny and Lydon were removed from the "employee" category, so their names are stricken through, etc.

The second spreadsheet provided for each scenario sets forth the tax loss computations for that scenario. As a comparison of the sheets demonstrates, shifting workers from the "employee" category to the "independent contractor" category has a twofold effect. It lowers the defendant's payroll tax obligation, because employers are not required to withhold or pay social security or medicare taxes ("FICA taxes") for independent contractors. It also, however, slightly increases the defendant's income tax obligation, because he loses the deduction to which he otherwise would have been entitled for his employer's share of such FICA taxes. In short, there are slightly offsetting impacts: the defendant benefits from not having to pay FICA taxes, but he also loses the corresponding deduction. The offsets are not identical, however. As the spreadsheets demonstrate, the FICA deduction is less in absolute dollar terms than the burden of the underlying tax, thus causing the defendant's overall tax obligation to go down as workers are shifted from the "employee" category to the "independent contractor" category.[1]

The specific scenarios addressed by the attached spreadsheets are as follows:

---

[1] In none of the scenarios has the government stricken a listed worker from both categories – i.e., treated that individual as not having performed any services for the defendant at all. It is more favorable to the defendant to move a worker into the "independent contractor" category than to strike the worker entirely because the defendant can still take an expense deduction (although not a FICA deduction) for compensation paid to independent contractors.

| Scenario/Exhibit | Description |
| --- | --- |
| 1 | All workers characterized as employees |
| 2 | Muslim/immigrant workers removed from "employee" category and treated as independent contractors; all others remain as employees |
| 3 | Muslim/immigrant workers plus Hacker, Canata, Sheehan, J. Matheny and Lydon removed from "employee" category; others remain as employees |
| 4 | Muslim/immigrant workers plus Hacker, Canata, Sheehan, J. Matheny, Lydon, Nagle, Palermo, Connolly, Dooley, Maloney, Donnelly and Stoddard removed from "employee" category; others remain as employees |
| 5 | All workers treated as independent contractors[2] |

The United States sets forth the following additional comments concerning the above scenarios:

1. The government concedes that the testimony at the sentencing trial established the Muslim workers to be independent contractors. Scenario 1 should thus not be adopted. It is attached solely for instructive purposes.

2. Scenario 3 derives from questions posed by the Court to government counsel during closing arguments concerning whether: (a) there was evidence in the trial record to support a finding that Messrs. Hacker, Canata and Sheehan worked for the defendant at all during the relevant time period; and (b) whether there was evidence to support the specific payroll dollar amounts assigned to Messrs. J. Matheny and Lydon. For purposes of Scenario 3, the government has removed these five workers from the "employee" group entirely. The

---

[2] The government has not attached a payroll list for Scenario 5. Such a list would have no names, because for purposes of the fifth scenario, all workers are treated as independent contractors.

3

government notes, however, that defense counsel provided the IRS with information concerning the foregoing workers during the course of pre-plea discussions over the amount of the labor expenses that the defendant was entitled to claim. The information consisted of affidavits from J. Matheny, Hacker and Lydon and an expense summary for Canata. Because these materials constituted hearsay, the government did not seek to admit them at the sentencing trial. The government has, however, attached them to this memorandum at Exhibit 6 for the purpose of establishing that the IRS did have a concrete factual basis for its treatment of these workers in its tax loss computations.

3. Scenario 4 takes the five workers who were the focus of the Court's questions during closing argument (Hacker, Canata, Sheehan, J. Matheny and Lydon) and adds to them several additional workers who were the focus of questions asked by defense counsel of IRS Special Agent O'Connell on cross-examination. Defense counsel's questions seemed to be intended to create two lists: (a) painters whom Agent O'Connell had interviewed; and (b) those whom she had not interviewed. The additional workers added to Scenario 4 (Nagle, Palermo, Connolly, Dooley, Maloney, Donnelly and Stoddard) are painters whom Agent O'Connell did not interview.

The government disagrees that the evidentiary standard for determining which workers were employees versus independent contractors should turn on which workers the IRS interviewed. The sole dividing line that was established by the evidence at trial – specifically, the trial testimony of Messrs. Severse and Abbott – was between the Muslim workers, who apparently were paid a flat fee per job, and everyone else, who received hourly wages, daily job assignments, direction and supervision, and virtually all of their equipment and supplies from the

defendant. Based on this testimony, and the corroborating documentary evidence that was introduced at trial (particularly, Exs. 4, 8, 9 and 11), the government requests that the Court adopt the tax loss computations set forth in Scenario/Exhibit 2, which classify the Muslim/immigrant workers as independent contractors but treat the remaining painters as employees.

4.  At the very end of closing argument, defense counsel requested that to the extent there were payroll amount discrepancies for any of the workers listed on both Exhibits 3 and 4, that the government perform one final set of tax loss computations that gave the benefit of the doubt on any such discrepancies to the defendant. The United States believes that only one such discrepancy exists, involving the amount of compensation paid to Richard Felton in 2000. Exhibit 3 lists Felton as having received $3,500 in 2000; Exhibit 4 sets forth an amount of $11,600. Giving the defendant the benefit of the higher amount (and hence the greater expense deduction) results in an approximately $3,150 dollar reduction in his income tax burden for 2000. That amount remains constant across all of the scenarios (e.g., whether Felton is classified as an employee or as an independent contractor).

5.  The government's final point relates to the impact of the foregoing tax loss scenarios on the defendant's guidelines sentencing range. The governing tax loss table is set forth in U.S.S.G. §2T4.1 (November, 2000 Manual). Depending on which scenario is chosen, three possible loss brackets apply: (a) $23,500 - 40,000; (b) $40,000 - 70,000; or (c) $70,000 - 120,000. Scenarios 1, 2 and 3 place the defendant in the highest of these three brackets ($70,000 - 120,000), which would put him at offense level 12 (Zone C) after acceptance. Scenario 4 would place the defendant in the middle bracket ($40,000 - 70,000) and put him at

offense level 11 (Zone C) after acceptance.  Scenario 5 would place the defendant in the lowest bracket ($23,500 - 40,000) and put him at level 10 (Zone B) after acceptance.

Based on the evidence submitted at the sentencing trial, and for the reasons set forth above, the government submits that the Court should apply the tax loss computations set forth in Scenario/Exhibit 2, and sentence the defendant at the low end of the guidelines range for offense level 12.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ **Michael J. Pineault**
Michael J. Pineault
Assistant U.S. Attorney
United States Courthouse, Suite 9200
1 Courthouse Way
Boston, MA  02210
(617) 748-3261

Dated: December 23, 2004

CERTIFICATE OF SERVICE

   This is to certify that I have this day served upon the person listed below a copy of the foregoing document by fax:

  Douglas A. Fleming, Esq.
  268 Summer Street, Third Floor
  Boston, MA 02210

This 22nd day of December, 2004

                **/s/ Michael J. Pineault**
                Michael J. Pineault
                Assistant United States Attorney