UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                       ) | Criminal No. 04-10213-WGY |
| ) | |
| DALE E. MATHENY          ) | |
| ) | |
| Defendant                ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States submits this memorandum in advance of the January 5, 2005 sentencing of Dale E. Matheny.

**A.    Introduction**

Dale Matheny ("Matheny") waived indictment and pleaded guilty on November 9, 2004 to a four-count Information charging him with failure to file a U.S. Individual Income Tax Return for the year 1997 in violation of 26 U.S.C. § 7203 (Count One) and with filing false and fraudulent returns for the years 1998, 1999 and 2000 in violation of 26 U.S.C. § 7206(1) (Counts Two, Three and Four).  Matheny's convictions arose out of his failure to disclose to the Internal Revenue Service or pay taxes associated with a painting business that he operated out of his home, known as Dale's Professional Painting Service ("Dale's Painting").

**B.    Procedural and Factual Background**

On December 20 and 21, 2004, the Court conducted a nonjury trial to resolve certain factual issues relating to the defendant's sentencing.  Prior to trial, on December 17, 2004, the parties filed joint stipulations with the Court in which they agreed that Dale's Painting had generated $841,898.95 in gross receipts during the period 1997-2000; that Matheny had reported only $77,065 of those receipts to the IRS (solely for the year 2000); and that the total amount of

unreported gross receipts for the four-year period from 1997 to 2000 equaled $764,833.95. The parties further stipulated that Matheny had cashed approximately $604,000 of these receipts, consisting principally of checks received from his clients, at a local check casher.

The parties were unable to reach agreement on the amount of the tax loss. The government asserted that Matheny had employed a number of painters in his business; that he willfully failed to withhold or pay over Federal Insurance Contribution Act ("FICA") taxes for these employees, instead paying them in "under the table" cash wages; and that the total loss for which Matheny should be sentenced included all of the tax obligations relating to his undisclosed business – i.e, the income tax obligations flowing from his unreported business receipts and the payroll (FICA) tax obligations involving his unreported employees.

In response, the defendant asserted that the painters were independent contractors for whom no payroll tax obligation existed; that even if the Court found the painters to be employees, Matheny did not act willfully in failing to withhold or pay over FICA taxes for them; and that the Court therefore should not include payroll tax in its computation of the tax loss for sentencing purposes.

**C.**     **Sentencing Trial**

As stated above, the Court conducted a nonjury trial on December 20 and 21, 2004 to resolve the foregoing issues. Two of the defendant's former painters testified: Joshua Severse and William Abbott. In brief, Messrs. Severse and Abbott distinguished between two groups of painters who worked for Matheny: (1) a crew of non-U.S. Muslim workers, who received a flat fee per job; and (2) everyone else, all of whom were paid an hourly wage (in cash), received virtually all of their equipment and supplies (save, perhaps, for personal brushes) from Matheny,

2

and were given their job assignments and supervised directly by Matheny.

The government also called IRS Special Agent O'Connell as a witness. Agent O'Connell testified concerning: (a) the $604,000 in customer checks that Matheny had cashed at the check casher; (b) business records seized during a search of Matheny's home; and (c) the defendant's tax filing history during the period 1995 to 2000. Of note, Agent O'Connell testified that the records seized during the search included a handwritten list titled "Employees - Salaries" (Ex. 4) and a blank, undated "Application for Employment" for Dale's Painting (Ex. 8). She also testified that Matheny's tax filing history showed the filing of quarterly payroll tax returns (Forms 941) for certain quarters preceding 1997 and also the filing of an annual Form 940 return for 1996. (Exs. 15A, 15B, 15C).

**D.**     **Post-Trial Tax Loss Submissions**

At the Court's request, the government made a post-trial submission on December 23, 2004 in which it provided five separate tax loss computations, each of which pertained to a different factual scenario that had been discussed during closing argument at trial. The sole variable that changed between scenarios was the classification of particular painters as employees versus independent contractors. As explained in the government's submission, the scenarios fell across a spectrum, ranging from Scenario 1, in which all painters were classified as employees for purposes of computing the defendant's corresponding income and payroll tax obligations, to Scenario 5, in which all painters were classified as independent contractors for purposes of computing the defendant's tax obligations.

For the reasons stated by the government both in its closing argument and in its post-trial submission, the United States contends that the Court should apply the tax loss computations

contained in Scenario 2, in which the non-U.S. Muslim workers are characterized as independent contractors and the remaining painters are treated as employees.

The governing legal standards are well settled. The determination of whether a worker is an employee or an independent contractor turns on the degree of control exercised over the individual. In situations where a worker is instructed when, where and with whom to work, is provided the tools and equipment needed to do the job, receives an hourly wage, incurs no unreimbursed business expenses, bears no risk of loss, has no chance of profit, and otherwise receives instruction and supervision from the defendant (or his company), the worker is an employee.[1]

Based on the testimony given by Messrs. Severse and Abbott, the painters who worked for Matheny met these criteria, with the sole exception of the non-U.S. Muslim crew, who received a flat fee per job.

The evidence likewise establishes the defendant's criminal intent. Between 1997 and 2000, he cashed slightly over $600,000 in customer receipts at a local check casher; opened no business bank account; and reported neither his business nor his receipts to the IRS until the year 2000. Even in 2000, he disclosed only approximately $77,000 in receipts for which customers had issued Form 1099's. He did not report an additional $270,000 in receipts for which no 1099's were filed.

In addition, Matheny paid his employees in "under the table" cash wages and filed no

---

[1] The IRS has set forth a comprehensive discussion of these factors in Publication 15-A, Employer's Supplemental Tax Guide, at 5 - 8, which is available at www.irs.gov. See also United States v. Silk, 331 U.S. 704 (1947); In re Newsome Auto Care, 123 B.R. 848, 850-52 (Bankr. W.D. Missouri 1991).

payroll tax returns reporting these wages for any quarter in 1997, 1998, 1999 or 2000.  Proof that Matheny acted knowingly and willfully is evidenced by the totality of his evasive acts, including his payment of "under the table" cash wages, and by the fact that his tax filing history shows the filing of payroll tax returns for periods prior to 1997, thus demonstrating knowledge of this requirement.

E.   **Application of the Sentencing Guidelines**

   Statutory Maximums

   The applicable statutory maximums for count one of the Information are:

   a. No more than 1 year imprisonment;
   b. A fine of up to $100,000;
   c. Costs of prosecution;
   d. Special assessment of $25; and
   e. One year supervised release.

(PSR ¶ 122, 135, 139, 141).

   The applicable statutory maximums on each of counts two through four of the Information are:

   a. No more than 3 years imprisonment;
   b. A fine of up to $250,000;
   c. Costs of prosecution;
   d. Special assessment of $100; and
   e. One year supervised release.

(PSR ¶ 122, 135, 139, 141).

   Sentencing Guidelines

   The plea agreement contains an express Blakely waiver by the defendant, pursuant to which he agreed, inter alia, to have his sentence determined pursuant to the Sentencing Guidelines.  (Agreement ¶ 7).  As set forth in the plea agreement, the parties have stipulated that those guidelines calculations should be performed pursuant to the Manual in effect at the time of

the offense (November 1, 2000) and that the applicable provisions are U.S.S.G. §§ 2T1.1 and 2T4.1. (Agreement ¶ 3).

If the Court applies the computations set forth in Scenario 2, as detailed in the government's December 23 Post-Trial Submission, the total tax loss is $95,324.97, consisting of $25,023 in income taxes and $70,301.97 in payroll taxes due and owing.[2]

This loss yields the following guidelines computation:

| | | |
|---|---|---|
| Tax Loss of More Than $70,000 and Not Greater Than $120,000 | 14 | §2T4.1(I) |
| Acceptance | -2 | §3E1.1 |
| **TOTAL** | **12** | Zone C (10-16 mos) |

The applicable fine range is $3,000 to $30,000. (U.S.S.G. §§ 5E1.2).

III.   **Sentencing Recommendation**

Pursuant to the terms of the parties' plea agreement, the government recommends that the Court impose a sentence at the low end of the applicable guidelines range – i.e., a split sentence of ten months (Zone C), with five months imprisonment and five months home confinement. See U.S.S.G. § 5C1.1(d)(2). Consistent with the plea agreement, the government further recommends a fine of $3,000, a special assessment of $325, and one year supervised release.

---

[2] The payroll tax amounts are included as relevant conduct, pursuant to U.S.S.G. §§ 1B1.3(a)(2) and 2T1.1, Note 2.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/ **Michael J. Pineault**
Michael J. Pineault
Assistant U.S. Attorney
United States Courthouse, Suite 9200
1 Courthouse Way
Boston, MA  02210
Dated: January 3, 2005   (617) 748-3261

CERTIFICATE OF SERVICE

    This is to certify that I have this day served upon the person listed below a copy of the foregoing document by fax:

    Douglas A. Fleming, Esq.
    268 Summer Street, Third Floor
    Boston, MA 02210

This 3rd day of January, 2005

    /s/ **Michael J. Pineault**
Michael J. Pineault
Assistant United States Attorney